STATE of Wisconsin, Plaintiff-Respondent,

v.

Billy G. JOHNSON, Defendant-Appellant.†

Court of Appeals

*No. 90–2903–CR. Submitted on briefs July 14, 1992.—Decided June 24, 1993.*

(Also reported in 503 N.W.2d 575.)

†Petition to review denied.

42

44

For the defendant-appellant the cause was submitted on the briefs of *Steven P. Weiss*, assistant state public defender, of Madison.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Sharon Ruhly*, assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J.[1] Billy Johnson appeals from a judgment convicting him of attempted murder (while armed), aggravated battery (while armed) and resisting arrest, and from an order denying his motions for postconviction relief. He was sentenced to a total of forty years on the charges: twenty-five years for

---

[1] This appeal, which has been pending for a considerable period of time, was first assigned for preparation of a "signed" opinion of the court on May 27, 1993.

attempted murder and fifteen years, consecutive, for aggravated battery.[2]

He argues for reversal on two grounds: (1) that the attempted murder and battery convictions subjected him to double jeopardy in violation of the United States and Wisconsin constitutions; and (2) that the trial court exceeded its discretion in imposing maximum consecutive sentences for the two offenses. We reject his claims and affirm the conviction.

The proscription against double jeopardy provides basic protections to persons charged with committing a crime: protection against a second prosecution for the same offense after either acquittal or conviction; and protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). This case concerns the final element: a claim that Johnson's sentences on the two charges punish him twice for the same offense.

In Wisconsin, such claims have long been evaluated — at least in the first instance — under the "elements only" analysis first applied by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932). In simplest terms, the test is whether each offense requires proof of an additional element or fact which the other does not.

> Multiple punishments are permissible if each offense requires proof of an additional element or fact which the other offense or offenses do not. Conversely, multiple punishments are constitutionally barred as the "same offense" . . . if the offenses are

---

[2] Johnson also received a nine-month concurrent sentence for resisting arrest.

both identical in law and identical in fact. *State v. Sauceda*, 168 Wis. 2d 486, 493–94 n.8, 485 N.W.2d 1, 4 (1992).

The test has been codified. Section 939.66(1), Stats., provides that a defendant "may be convicted of either the crime charged or an included crime, but not both" and goes on to state that an "included crime" is one "which does not require proof of any fact in addition to those which must be proved for the crime charged." The analysis focuses entirely on the statutes defining the offenses. *State v. Carrington*, 134 Wis. 2d 260, 264, 397 N.W.2d 484, 486 (1986). Thus, under the "elements only" test,

> [A]n offense is a "lesser included" one only if all of its statutory elements can be demonstrated without proof of any fact or element in addition to those which must be proved for the "greater" offense.
> . . . An offense is not a lesser-included one if it contains an additional statutory element. *Id.* at 265, 397 N.W.2d at 486–87 (quoting *State v. Hagenkord*, 100 Wis. 2d 452, 481, 302 N.W.2d 421, 436 (1981) (citations omitted)).

If the *Blockburger* test is met — if each offense requires proof of an element the other does not — we will presume that the legislature intended to permit cumulative punishments for the two offenses. *Sauceda*, 168 Wis. 2d at 495, 485 N.W.2d at 4. The question then becomes whether there are "other factors which evidence a contrary legislative intent." *Id.* at 495, 485 N.W.2d at 5.

The elements of attempted murder are that the defendant attempts to "cause[ ] the death of another

human being with intent to kill that person or another . . . ." Section 940.01(1), Stats. The elements of aggravated battery are that the defendant "causes bodily harm to another by an act done with intent to cause great bodily harm to that person or another with or without the consent of the person so harmed . . . ." Section 940.19(2), Stats.

Neither offense includes the other. To convict a person of attempted first degree homicide, the state must prove that he or she intended to kill the victim; no proof of any harm to the victim is necessary. And, to secure a conviction for aggravated battery, the state must prove only that the defendant intended to cause the victim great bodily harm; an intent or attempt to kill is not part of the offense. We conclude, therefore, that each offense requires proof of an element the other does not,[3] thus satisfying the *Blockburger* test and activating the presumption that the legislature intended to permit cumulative punishments for the two offenses. *Sauceda*, 168 Wis. 2d at 495, 485 N.W.2d at 4.

It is a presumption that will be overcome only by "a clear indication of legislative intent to the contrary." *State v. Kuntz*, 160 Wis. 2d 722, 756, 467 N.W.2d 531, 545 (1991). To ascertain such a contrary intent, we look to "the language of the statutes, the legislative history, the nature of the proscribed conduct, and the appropriateness of multiple punishment." *Id.*

---

[3] In this regard, see *State v. Ambuehl*, 145 Wis. 2d 343, 363, 425 N.W.2d 649, 657 (Ct. App. 1988) (attempted first degree murder and injury by conduct regardless of life held to be separate offenses).

■

The only statutory provision generally limiting the number of convictions that may be obtained in a single prosecution is sec. 939.66, Stats., which provides that "[u]pon prosecution for a crime, the actor may be convicted of either the crime charged or an included crime, but not both." The statute goes on to list several specific "paired" offenses for which multiple convictions may not be had; and attempted murder/aggravated battery is not among them. The legislature has plainly stated that if a single act "forms the basis for a crime punishable under more than one statutory provision, prosecution may proceed under any or all such provisions." Section 939.65, Stats. We see no "clear indication" in the statutes or the arguments offered by Johnson of a contrary legislative intent that would rebut the *Sauceda* presumption. *Sauceda*, whether one agrees with it or not, is the law of Wisconsin; and it requires rejection of Johnson's double jeopardy challenge.

Johnson also challenges the length of his sentence, asserting that consecutive sentences were inappropriate in this case and, further, that the total time imposed was excessive.

He begins by noting that "various Model Acts and [the] ABA Standards [relating to sentencing alternatives and procedures]" have suggested that limitations be imposed on the authority of a court to impose consecutive sentences, and he urges us to "begin setting out some meaningful restraints [on] the trial judges' discretion to impose consecutive sentences" along the lines suggested in those acts and standards.

■

It is true, as Johnson points out, that more than fifteen years ago the supreme court "recommended"

that the ABA standards for consecutive sentencing "be given consideration as a guideline" in Wisconsin. *See Green v. State*, 75 Wis. 2d 631, 643–44, 250 N.W.2d 305, 311, *cert. denied*, 434 U.S. 841 (1977). But the court has never pursued the matter further; indeed, it has repeatedly declined to adopt the standards. *See State v. LaTender*, 86 Wis. 2d 410, 432, 273 N.W.2d 260, 270 (1979); *Cunningham v. State*, 76 Wis. 2d 277, 284 n.13, 251 N.W.2d 65, 68 (1977); *Drinkwater v. State*, 73 Wis. 2d 674, 684, 245 N.W.2d 664, 669 (1976). It is, of course, for the state's highest court, not this one, to develop and implement such a policy in furtherance of its law-declaring function. *State v. Schumacher*, 144 Wis. 2d 388, 404–05, 424 N.W.2d 672, 678 (1988).

■

Section 973.15(2), Stats., allows a court to "impose as many sentences as there are convictions and [to] provide that any such sentence be concurrent with or consecutive to any other sentence imposed at the same time or previously." Thus, under existing law, whether to impose consecutive, as opposed to concurrent, sentences is, like all other sentencing decisions, committed to the trial court's discretion. *Cunningham*, 76 Wis. 2d at 284, 251 N.W.2d at 68. We thus consider whether the trial court exceeded its sentencing discretion when it made the sentences for Johnson's two convictions consecutive.

■

Because trial courts have "a great advantage [over appellate courts] in considering the relevant factors and the [defendant's] demeanor" in sentencing proceedings, they are granted wide discretion in passing sentence. *State v. Harris*, 119 Wis. 2d 612, 622, 350 N.W.2d 633, 638 (1984). And a defendant challenging a sentence bears a heavy burden, for Wisconsin law rec-

ognizes a "strong policy against interference with the discretion of the trial court in passing sentence." *State v. Macemon*, 113 Wis. 2d 662, 670, 335 N.W.2d 402, 407 (1983). Indeed, we will presume the trial court acted reasonably, so it is up to the defendant to show an unreasonable or unjustifiable basis for the sentence. *Harris*, 119 Wis. 2d at 622–23, 350 N.W.2d at 638–39.

A court may exceed its discretion when it places too much weight on any one factor in the face of contravening considerations, or when the sentence is so excessive as to "shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457, 461 (1975). However, the weight to be accorded to particular factors in sentencing is for the trial court, not the appellate court, to determine. *In re Felony Sentencing Guidelines*, 120 Wis. 2d 198, 202–03, 353 N.W.2d 793, 796 (1984). Thus, we may not substitute our judgment or preference for a sentence merely because, had we been in the trial court's position, we would have imposed a different sentence. *McCleary v. State*, 49 Wis. 2d 263, 281, 182 N.W.2d 512, 521 (1971). And where the challenge is that the sentence is excessive, the defendant bears the burden of establishing that it is unjustified or unreasonable. *Elias v. State*, 93 Wis. 2d 278, 281–82, 286 N.W.2d 559, 560 (1980).

In *State v. Glotz*, 122 Wis. 2d 519, 524, 362 N.W.2d 179, 182 (Ct. App. 1984), we noted that "[t]he primary factors on which a sentencing decision should be based are the gravity of the offense, the character of the offender and the need to protect the public." Other factors which, if relevant in a particular case, may be

considered by the trial court in sentencing are the defendant's record and history of undesirable behavior patterns, his or her personality and social traits, presentence investigation reports, the aggravated nature of the crime, the degree of culpability, the defendant's demeanor, remorse and cooperativeness, his or her educational and employment history, the need for rehabilitative control and, of course, the rights of the public. *State v. Lewandowski*, 122 Wis. 2d 759, 763, 364 N.W.2d 550, 552 (Ct. App. 1985).

In this case, the trial court began by discussing Johnson's prior record — which included one felony (for which his probation was revoked) and one misdemeanor — his age, his education, his spotty employment record, a history of "undesirable behavior" over several years' time, his lack of "social conscience" and "character," and his need for "rehabilitative control" in the form of assistance in obtaining job skills and treatment for his personality and character deficits. The court then discussed the "viciousness and the aggravated nature" of the offenses:[4]

> There is no question whatsoever about the viciousness of the acts that you engaged in and the aggravated nature of thos[e] acts. But for circumstances beyond your control, [the victim] would today be dead. I'm convinced you thought she was dead or you would have continued attempting to kill her. This is an episode of viciousness and this is an

---

[4] The victim was Johnson's woman friend, and the charges resulted from an incident in which, in the presence of their young son, Johnson beat her and repeatedly stabbed her in the scalp, arm, face, chest and neck, eventually breaking the knife blade off in her neck. She suffered serious knife wounds to her hands in trying to fend him off. When the paramedics arrived, they were unable to obtain a blood pressure reading.

episode that is aggravated beyond anything else that I've seen while sitting as a Judge now for some nine years.

The court also considered the interests of the public in having Johnson incarcerated for a substantial period of time.

> The citizens of this state, including [the victim], are entitled to have you obey the law, and they are entitled to be protected in their persons and in their property from criminal conduct committed by other persons. You are required to obey the law, Mr. Johnson, the same as every other adult person in this state.
> ... This court has an obligation to protect not only the public but ... to protect [the victim] from you, and you have indicated and the testimony was clear that if you couldn't have [her] nobody was going to have her and she would no longer be alive.

The trial court reiterated at the postconviction motion hearing that "this was the most vicious attack ... the court has seen" and noted that Johnson "did everything he could" to kill the victim, and that the only reason he ceased his attack was that he thought he had in fact killed her.

A court exercises discretion when it considers the facts of record and reasons its way to a rational, legally sound conclusion. *McCleary*, 49 Wis. 2d at 277, 182 N.W.2d at 519. "And where the record shows that the court ... considered the facts of the case and reasoned its way to a conclusion that is (a) one a reasonable judge could reach and (b) consistent with applicable law, we will affirm the decision even if it is not one with which we ourselves would agree." *Burkes v. Hales*, 165

Wis. 2d 585, 590, 478 N.W.2d 37, 39 (Ct. App. 1991) (footnote omitted). Indeed, "[b]ecause the exercise of discretion is so essential to the trial court's functioning, we generally look for reasons to sustain discretionary decisions." *Schneller v. St. Mary's Hosp.*, 155 Wis. 2d 365, 374, 455 N.W.2d 250, 254 (Ct. App. 1990), *aff'd*, 162 Wis. 2d 296, 470 N.W.2d 873 (1991).

We are satisfied in this case that the trial court exercised its discretion under these standards and that, while we might not have reached the same result ourselves on this record, we cannot say the result reached by the court was unreasonable or lacked a rational basis. We conclude, therefore, that the court did not exceed its discretion in sentencing Johnson.[5]

[5] The dissenting judge finds the trial court's explanation of its reasons for imposing consecutive sentences to be lacking. The dissent does not suggest that the sentences, separately or in the aggregate, were unduly harsh or unconscionable, nor does it contend that the trial court did not adequately explain its reasons for the length of the sentences imposed. According to the dissent, the court, in addition to undertaking a point-by-point analysis of every relevant fact required by the statutes and cases, as we have discussed above, also should have discussed: "that [Johnson's] attempt to kill [the victim] necessarily, under the facts, included his having intentionally inflicted great bodily injury upon her."

As we have noted in the body of this opinion, the trial court explained in considerable detail its reasons for sentencing Johnson to the maximum terms; and the court was well aware that, consecutively, the sentences totaled forty years.

Johnson was found guilty of two serious and distinctly vicious crimes; and we have concluded, following *Sauceda*, 168 Wis. 2d 486, 485 N.W.2d 1 (1992), that the convictions do not violate Johnson's right under the double jeopardy provisions of the constitution not to be punished twice for the same offense.

*By the Court.*—Judgment and order affirmed.

GARTZKE, P.J. (*dissenting*). Johnson's convictions for both attempted homicide and aggravated battery pass the elements-only test for double jeopardy, but the question remains whether the legislature intends to permit multiple punishments. *State v. Sauceda*, 168 Wis. 2d 486, 495, 485 N.W.2d 1, 5 (1992). The elements-only test focuses exclusively on the statutes defining the offenses, without considering the facts of the defendant's activity. *State v. Carrington*, 134 Wis. 2d 260, 264, 397 N.W.2d 484, 486 (1986). Those facts are pertinent, however, to determining the legislature's intent. The *Sauceda* court examined the facts when determining whether the legislature intended that multiple punishments attend the sexual assaults with which the defendant was charged in that case. *Sauceda*, 168 Wis. 2d at 500, 485 N.W.2d at 7.

The facts are that Johnson engaged in a single course of conduct with a single purpose: to kill a single person, Vanessa Cooper. Cooper testified that she had just left the house and was standing on the sidewalk when Johnson came out holding a knife. He approached, grabbed her around the neck and asked her to come back into the house. She refused and pulled away from him. He was about to stab her in the stomach but she grabbed the blade, cutting her hand. She turned her back toward him, felt the knife go into her neck, and fell to the ground, apparently face down. He

Where, as is the case here, a defendant is properly convicted of two crimes and the court adequately explains its reasons for selecting the total period of incarceration imposed for those crimes, we see no need to require it to jump through still another hoop.

stabbed her several times until the knife broke and the blade stuck in her neck. She pulled it out while he continued to stab her with the remaining part of the knife. She pretended she was dead, and he then moved away from her. She got up, ran to a neighbor's house, and temporarily passed out. Johnson came to the door and asked, "Is the bitch dead yet?"

Aggravated battery is causing great bodily harm to another by an act done with intent to cause great bodily harm to that person without the person's consent. Section 940.19(2), Stats. First-degree intentional homicide is causing the death of another human being with intent to kill that person. Section 940.01(1), Stats. Because Johnson was unsuccessful in his effort to kill Cooper, he is guilty of an attempted homicide. His attempt to kill Cooper necessarily included the infliction of great bodily harm on Cooper during a single and uninterrupted course of conduct. Since death is the ultimate harm, a person cannot repeatedly stab another with intent to kill without at the same time causing great bodily harm to the other person. The person who, as a matter of fact, intends to kill another by repeated knife wounds also intends to cause great bodily harm. No other inference is possible.

We must assume that the legislature acts rationally. The question then is whether a rational legislature would intend that a defendant in Johnson's position be convicted of both attempted homicide and aggravated battery. The question practically answers itself. A rational legislature does not create statutes with the intent of permitting multiple convictions when the commission of one crime necessarily involves commission of another. A rational legislature will act with fundamental fairness and avoid prejudice to the defendant. Those are the reasons which underlie the

prohibition against double jeopardy. *State v. Eisch*, 96 Wis. 2d 25, 34, 291 N.W.2d 800, 805 (1980). Fundamental fairness requires that a "defendant ought not be charged, tried, or convicted for offenses that are substantially alike when they are a part of the same general transaction or episode." *Id.* The *Eisch* court concluded that to convict a defendant for offenses that are substantially alike when they are part of the same general transaction or episode "would impose jeopardy of multiple trials or convictions for a single offense." *Id.* Given a rational legislative intent, the prohibition against double jeopardy is violated by convicting Johnson of both attempted homicide and aggravated battery.

The intentional homicide statute, sec. 940.01(1), Stats., and aggravated battery statute, sec. 940.19(2), Stats., do not protect distinct interests. "The homicide statutes protect life and bodily security." *State v. Kuntz*, 160 Wis. 2d 722, 757, 467 N.W.2d 531, 545 (1991). So does the aggravated battery statute, the causing of great bodily harm to another.

If I am wrong, and the legislature indeed intends to allow multiple convictions even when as a matter of fact commission of one crime necessarily includes commission of the other charged crime, the question is whether the trial court erroneously exercised its sentencing discretion. The court imposed the maximum and consecutive sentences for the multiple convictions. That the court can impose maximum but also consecutive sentences on multiple convictions is beyond dispute. *State v. Paske*, 163 Wis. 2d 52, 61–62, 471 N.W.2d 55, 58–59 (1991). It is also beyond dispute that the trial court had a choice to make: whether to impose concurrent or consecutive sentences on Johnson for his convictions.

When a trial court imposes a maximum or even a near-maximum sentence, the court must state its "reasons *why* a lengthy, near-maximum sentence was appropriate." *McCleary v. State*, 49 Wis. 2d 263, 282, 182 N.W.2d 512, 522 (1971) (emphasis added). In *McCleary*, the trial court sentenced the defendant to nine years for forgery, ten being the maximum. The trial court gave reasons for its sentence without attempting "to explain why the near-maximum sentence was appropriate in the circumstances." *Id.* at 270, 182 N.W.2d at 516. The *McCleary* court vacated the nine-year sentence and imposed a five-year sentence. *Id.* at 291, 182 N.W.2d at 526.

If the law requires a trial court to state *why* it imposes near-maximum or maximum sentences, surely the law requires the court to state *why* it imposes consecutive sentences on multiple convictions arising out of a single course of conduct. The reason for the requirement is even greater for multiple convictions than it is for giving a maximum sentence. A maximum sentence is imposed for a single crime. If, as in Johnson's case, consecutive sentences are imposed for a single course of conduct, the defendant is repeatedly punished for the same conduct. *See* 3 ABA STANDARDS FOR CRIMINAL JUSTICE, Std. 18–4.5, at 296–98 (1980) (discussing protections "against the imposition of consecutive sentences based on the fragmentation of one criminal transaction into several legally distinct offenses.").

During the sentencing hearing, the trial court explained the many factors it took into account, including "the viciousness and the aggravated nature of the crimes." The court said that,

> But for circumstances beyond your control, Vanessa
> Cooper would today be dead. I'm convinced that you
> thought she was dead or you would have continued
> attempting to kill her. This is an episode of vicious-
> ness and this is an episode that is aggravated
> beyond anything else that I've seen while sitting as
> a judge now for some nine years.

The court gave ample reasons for its ultimate conclu-
sion that "long-term confinement is necessary to
protect the public from further criminal activity" by
Johnson. Its reasons explain its imposition of the maxi-
mum sentences but not why it imposed *consecutive*
sentences.

The trial court had an opportunity to provide that
explanation. Johnson moved for post-conviction relief
on grounds that the imposition of consecutive rather
than concurrent sentences was inappropriate. His
counsel pointed out that the presentence report recom-
mended that the maximum sentences be imposed but
that they run concurrently. Counsel contended that
even if under the elements-only test Johnson could be
charged with both offenses, his actions were "indivisi-
ble." In response, the prosecutor contended that
consecutive sentences may be imposed with no showing
that separate acts had occurred.[1]

The trial court's response to Johnson's motion was
to point out that the court had the authority to impose
consecutive sentences and that the sentences imposed
were not unduly harsh or unconscionable, the court
repeated its earlier statements that but for the fact

---

[1] The prosecutor implied that because Johnson could have
stopped after he had unsuccessfully tried to stab Cooper in the
stomach but merely slashed her hand and continued to stab and
slash until he thought she was dead, separate acts were
involved.

61

that Cooper played dead, "she would now in fact be dead. The defendant thought she was dead and that's when he desisted from stabbing her further or pounding her head on the concrete. This was the most vicious attack that the court has seen since going on the bench in 1980." The court added that the defendant had been a "leech" on the victim throughout the years and thought he could threaten and force her to live in servitude for the rest of her life. The court said that it had carefully considered its sentence because it had a recommendation for concurrent sentencing, and in the court's considered judgment, consecutive sentences were appropriate.

The question is not whether the sentences were unduly harsh or unconscionable. The question is whether the trial court provided an adequate reason *why* the sentences should be consecutive. Nowhere did the court address the fundamental problem before us: that defendant's attempt to kill Vanessa Cooper necessarily, under the facts, included his having intentionally inflicted great bodily injury upon her. Indeed, the court's repeated statement that Johnson continued his attack on Cooper until he thought she was dead points up that Johnson had engaged in a single course of conduct with a single purpose: to kill Cooper.

I conclude that the defendant's conviction for aggravated battery should be set aside on grounds that he has been subjected to double jeopardy. In any event, this court should set aside the sentences to the extent that they are consecutive, and sentence Johnson to concurrent terms. *See McCleary*, 49 Wis. 2d at 291, 182 N.W.2d at 526.