STATE of Wisconsin, Plaintiff-Respondent,

v.

David L. REYNOLDS, Defendant-Appellant.†

Court of Appeals

*No. 96–0265–CR. Submitted on briefs September 6, 1996.—Decided November 7, 1996.*

(Also reported in 557 N.W.2d 821.)

†Petition to review denied.

358

For the defendant-appellant the cause was submitted on the briefs of *Katherine R. Kruse* of *Legal Assistance to Institutionalized Persons Project* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, with *Marguerite M. Moeller*, assistant attorney general.

Before Eich, C.J., Dykman, P.J., and Deininger, J.

EICH, C.J. David L. Reynolds appeals from a judgment convicting him of burglary/battery and intermediate battery and from an order denying his motion for postconviction relief. He argues that he was denied effective assistance of counsel because his attorney failed to raise a double-jeopardy objection to the charges, which he contends are multiplicitous. We disagree and affirm the judgment and order.

Reynolds and several acquaintances broke into an eighty-six-year-old woman's home looking for food and money. During the course of the burglary, the victim was struck repeatedly in the head with a frying pan. One witness testified that Reynolds was responsible for the beating.[1] Reynolds was charged with several offenses as a result of the incident and, as indicated, the jury found him guilty of burglary/battery and intermediate battery.[2] In his motion for postconviction

---

[1] At trial and on appeal, Reynolds maintains that James Helmer, who entered a plea agreement with the State for his involvement in the burglary, battered the victim. Although Reynolds confessed to beating the victim, he states he did so in response to threats from Helmer. This is not, however, an issue on appeal.

[2] The jury acquitted Reynolds of a more serious "aggravated" battery charge under § 940.19(2), Stats., 1991-92, and convicted him of the lesser-included offense of "intermediate" battery under § 940.19(3). The words "aggravated," "intermediate" and "simple" in respect to types of battery are not statutory terms but "convenient shorthand expressions of the statutory crimes." *See State v. Richards*, 123 Wis. 2d 1, 2 n.2, 365 N.W.2d 7, 7 (1985). The battery statute, § 940.19, Stats., 1991-92, provides:

[Simple Battery] (1) Whoever causes bodily harm to another by an act done with intent to cause bodily harm to that person or

relief, Reynolds argued that his trial counsel's failure to raise the double-jeopardy defense denied him effective assistance of counsel and prejudiced his appeal because even an unsuccessful motion would have preserved the issue for review. After an evidentiary hearing, the trial court denied the motion, and Reynolds appeals.

For a defendant to prevail on a claim of ineffective assistance of counsel, he or she must establish that counsel's actions constituted deficient performance *and* that the deficiency prejudiced the defense. *Strick-*

another without the consent of the person so harmed is guilty of a Class A misdemeanor.

**[Intermediate Battery] (1m)** Whoever causes great bodily harm to another by an act done with intent to cause bodily harm to that person or another without the consent of the person so harmed is guilty of a Class E felony.

**[Aggravated Battery] (2)** Whoever causes great bodily harm to another by an act done with intent to cause great bodily harm to that person or another with or without the consent of the person so harmed is guilty of a Class C felony.

**[Intermediate Battery] (3)** Whoever intentionally causes bodily harm to another by conduct which creates a high probability of great bodily harm is guilty of a Class E felony. A rebuttable presumption of conduct creating a substantial risk of great bodily harm arises:

(a) If the person harmed is 62 years of age or older . . . .

Subsection (1) is also referred to as misdemeanor battery and subsections (1m), (2) and (3) as felony battery. We refer to the subsections as indicated above. Subsection (3), under which Reynolds was convicted, was subsequently amended. *See* § 940.19(6), STATS.

Reynolds was also charged with a third count of first-degree recklessly endangering safety, and when the jury failed to return a verdict, the trial court declared a mistrial as to that count and dismissed it.

*land v. Washington*, 466 U.S. 668, 687 (1984). Representation is not constitutionally ineffective unless both elements of the test are satisfied. *State v. Guck*, 170 Wis. 2d 661, 669, 490 N.W.2d 34, 37 (Ct. App. 1992), *aff'd*, 176 Wis. 2d 485, 500 N.W.2d 910 (1993). The defendant must show that his or her counsel " 'made errors so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth Amendment.' " *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845, 847 (1990) (quoted source omitted). Review of counsel's performance gives great deference to the attorney, and every effort is made to avoid determinations of ineffectiveness based on hindsight. "Rather, the case is reviewed from counsel's perspective at the time of trial, and the burden is . . . on the defendant to overcome a strong presumption that counsel acted reasonably within professional norms." *Id.* at 127, 449 N.W.2d at 847-48.

We consider first whether Reynolds's assertion of a double-jeopardy violation has merit.

██

Multiple convictions for the same offense violate the double-jeopardy protections of the state and federal constitutions. *State v. Sauceda*, 168 Wis. 2d 486, 492, 485 N.W.2d 1, 3 (1992). Whether a violation exists in a given case is a question of constitutional law which we review de novo. *Id.*

██

We employ a two-step test to analyze claims of multiplicity. We first apply the "elements only" test of *Blockburger v. United States*, 284 U.S. 299 (1932), to determine whether each charged offense requires proof of an additional element or fact which the other does not. *State v. Johnson*, 178 Wis. 2d 42, 48-49, 503 N.W.2d 575, 576 (Ct. App. 1993). The analysis focuses

entirely on the statutes defining the offenses and has been codified in § 939.66(1), STATS., which provides that a defendant "may be convicted of either the crime charged or an included crime, but not both," and defines "included crime" as one "which does not require proof of any fact in addition to those which must be proved for the crime charged." *Id.* at 49, 503 N.W.2d at 576. Thus, under the *Blockburger* test:

> [A]n offense is a "lesser included" one only if all of its statutory elements can be demonstrated without proof of any fact or element in addition to those which must be proved for the "greater" offense . . . [and an] offense is not a lesser-included one if it contains an additional statutory element.

*Johnson*, 178 Wis. 2d at 49, 503 N.W.2d at 576 (quoted source omitted).

■

If the *Blockburger* test is met—if each offense requires proof of an element the other does not—a presumption arises that the legislature intended to permit cumulative punishments unless other factors indicate otherwise. *State v. Selmon*, 175 Wis. 2d 155, 161, 498 N.W.2d 876, 878 (Ct. App. 1993). "The question then becomes whether there are 'other factors which evidence a contrary legislative intent.' " *Johnson*, 178 Wis. 2d at 49, 503 N.W.2d at 576 (quoted source omitted).

The *Blockburger* analysis begins with the applicable statutes. Reynolds argues that because the phrase "a battery" in § 943.10(2)(d), STATS., may be said to refer to any of the types of battery listed in § 940.19, STATS., intermediate battery under § 940.19(3) must necessarily be a lesser-included offense of burglary/battery under § 943.10(1)(a) and (2)(d). As a

364

result, he maintains that conviction of both contravenes *Blockburger* as well as § 939.66, STATS.

■

We reject the argument. The language of § 943.10(2)(d), STATS., is ambiguous in that it is capable of being understood by reasonably well-informed persons in either of two senses—the phrase "a battery" could be considered to mean either a simple battery or any of the batteries defined in the statute. *See Robinson v. Kunach*, 76 Wis. 2d 436, 444, 251 N.W.2d 449, 452 (1977). As a result, we may construe it in light of its history, context, subject matter and scope. *Kluth v. General Cas. Co.*, 178 Wis. 2d 808, 815, 505 N.W.2d 442, 445 (Ct. App. 1993).

■

Section 943.10(2)(d), STATS., had its origin in § 343.11(3), STATS., 1953, entitled "aggravated burglary," which, although phrased somewhat differently, penalized the same conduct as the present statute. A Legislative Council comment to § 343.11(3) stated that the battery which formed the antecedent offense to "aggravated burglary" was "[b]attery [as] defined in section 340.20"—the language of which is essentially identical to today's "simple battery" statute.[3] 5 WISCONSIN LEGISLATIVE COUNCIL, JUDICIARY COMMITTEE REPORT TO THE CRIMINAL CODE 104 (1953). Our review of this history satisfies us that the legislature intended the term "a battery" in § 943.10(2)(d) to refer solely to sim-

---

[3] Section 340.20, STATS., 1953, defined the term as "[c]aus[ing] bodily harm to another by an act done with intent to cause bodily harm to that person or another without consent . . . ." The definition of simple battery in § 940.19(1), STATS., 1993-94, is "caus[ing] bodily harm to another by an act done with intent to cause bodily harm to that person or another without the consent of the person so harmed . . . ."

ple battery under § 940.19(1), and that it may not be read to refer or apply to other forms of battery created by later legislatures.

Moving to the *Blockburger* "additional fact" test, we note first the elements of simple battery. They are (1) causing bodily harm to another (2) by an act done with intent to cause bodily harm to that person or another (3) and without the consent of the injured party and (4) with the defendant's knowledge of the lack of consent. WIS J I—CRIMINAL 1220 (1994). Intermediate battery, on the other hand, has the following elements: (1) causing bodily harm to another (2) by an act done with intent to cause such harm and (3) which act creates a high probability of great bodily harm and (4) the defendant has knowledge of such probability. *See* WIS J I—CRIMINAL 1226 (1994).[4] The jury in this case was so instructed.

Reynolds concedes that *Blockburger* permits multiple convictions for simple battery and intermediate battery. He acknowledges that each offense requires proof of a fact that the other does not: simple battery requires proof of nonconsent, which is not an element of intermediate battery, and intermediate battery requires proof of conduct that creates a high probability of great bodily harm, which is not an element of simple battery. *See State v. Richards*, 123 Wis. 2d 1, 365 N.W.2d 7 (1985).[5] We agree with him that if

---

[4] The 1994 version uses "substantial risk" instead of "high probability." *See* WIS J I—CRIMINAL 1226 cmt. (1994).

[5] In *Richards*, the supreme court held that both simple battery and intermediate battery, as defined in § 940.19(1m), STATS., 1979-80, require proof of an element not required for proof of aggravated battery—nonconsent of the victim—and that, as a result, simple battery and intermediate battery are

the predicate offense for the burglary/battery charge was intermediate battery and he was charged with intermediate battery, the charges would fail *Blockburger*. But, as we noted above, that did not occur here. The *Blockburger* test was met, triggering the presumption that the legislature intended to allow cumulative punishments for the same offenses.

Reynolds argues that, even so, other factors indicate that the legislature did not intend to permit cumulative punishments under the two statutes. First, he points to § 939.66(2m), STATS., which provides that a "less serious" form of battery is an included offense of a more serious battery, and he maintains that even though conviction for simple and intermediate battery is permissible under *Blockburger*, the statute establishes that the legislature did not intend to allow cumulative punishments.

 The crimes charged here are not differing degrees of battery. We have discussed the legislative history of the burglary/battery statute. It originated in the "property crimes" chapter of the statutes and remains there today as a form of burglary. The "battery" element of the offense is a penalty-enhancer, increasing the possible penalty if the burglar "[w]hile in the burglarized enclosure commits a battery on a person lawfully therein," just as other aggravating circumstances—such as being armed, or attempting to use an explosive, during the burglary—serve a similar penal

---

not lesser-included offenses of aggravated battery. *Richards*, 123 Wis. 2d at 5, 365 N.W.2d at 8-9. We believe *Richards* still controls here because we are comparing the elements of simple battery and the form of intermediate battery set forth in subsection (3), and they have different elements, as we discussed above. *See supra* note 2.

purpose. Section 943.10(2), STATS. Battery, on the other hand, is—and always has been—found in the "crimes against life and bodily security" chapter. Section 940.19, STATS. They are separate offenses, and we agree with the State that there is nothing in § 939.66(2m), STATS., to suggest that it was intended to affect the State's ability to convict a defendant of both burglary/battery (with simple battery as its predicate) and intermediate battery.[6] Had the legislature so intended, it would have been easy to say so in the statute, as it did with respect to several other offenses.

Reynolds also contends that the felony-murder statute—which he says has been interpreted to preclude bringing charges for both the homicide and the predicate felony—is directly analogous. Even if we were to agree with the latter proposition, however, the cases Reynolds cites in support of this argument

---

[6] As Reynolds suggests, § 939.66(2m), STATS., was enacted in response to the *Richards* decision, which held that simple battery and intermediate battery were not lesser-included offenses of aggravated battery. *See supra* note 5. The *Richards* court's concern was that the absence of any lesser-included battery offense made the prosecutor's charging decision particularly difficult and deprived the defendant of the option of pleading guilty to a lesser degree of battery. *Richards*, 123 Wis. 2d at 12, 365 N.W.2d at 12. We agree with the State that such a concern is unrelated to Reynolds's claim that the legislature intended to prevent multiple punishment for burglary/battery and felony battery based on the same conduct.

The same is true with the other concern expressed in *Richards*: the incongruity of having attempted battery legislatively made a lesser-included offense of aggravated battery while a completed—although less serious—form of battery was not. *Id*. This, too, has nothing to do with the propriety of punishing a defendant for both burglary/battery and intermediate battery based on the same conduct.

involved crimes that were lesser-included offenses of the murder charge,[7] in other words, charges that would fail the *Blockburger* elements-only test. And, as we have held above—and as Reynolds concedes—the charges in this case pass that test.

Because a double-jeopardy motion would have been denied under the facts and applicable law, the failure to bring such a motion cannot be said to have been either deficient performance or prejudicial, and Reynolds's appeal fails.

*By the Court.*—Judgment and order affirmed.

---

[7] *See State v. Gordon*, 111 Wis. 2d 133, 135, 330 N.W.2d 564, 564 (1983); *State v. Carlson*, 5 Wis. 2d 595, 608-09, 93 N.W.2d 354, 361 (1958).